NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 03-51524 |
| | : | Jointly Administered |
| CONGOLEUM CORPORATION, et al., | : | Chapter 11 |
| | : | |
| Debtors and Debtors-in-Possession | : | |
| | : | |
| | : | |
| CONGOLEUM CORPORATION, Debtor-in Possession, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Adversary No. 05-6245 |
| | : | |
| ARTHUR J. PERGAMENT, as the Collateral Trustee of the Collateral Trust, *et al.,* | : | |
| | : | **MEMORANDUM OPINION** |
| Defendants | : | Hearing Date: May 8, 2006 |
| | : | Document Numbers: 52 & 79 |

The Plaintiff/Debtors move for summary judgment with respect to Counts I and II of their First Amended Complaint ("Complaint").  Certain asbestos claimant defendants ("Certain Defendants")[1] oppose the motion.  The Official Committee of Bondholders joined the Debtors' reply to Certain Defendants' opposition to the motion.  The court took oral argument on May 8, 2006, and reserved decision.

Summary judgment should not be lightly granted.  The Supreme Court has stated that "summary judgment is appropriate only when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56©. The party moving for summary judgment has the burden of establishing the nonexistence of any "genuine issues of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Summary judgment should not be granted if a reasonable jury based on that evidence could return a verdict for the nonmoving party.  In re CitX Corp., Inc., – F.3d –,  2006 WL 1453117 (3d Cir. May 26, 2006); Tran v. Metropolitan Life Ins. Co., 408 F.3d 130, 135 (3d Cir. 2005).   The Third Circuit has stated that whenever there is even the "slightest doubt regarding the facts of a case, summary judgment should not be granted." Tomalewski v. State Farm Life Ins, Co., 494 F.2d 882, 884 (3d Cir. 1984)

The moving party bears the burden of proving that there is no issue of material fact, though once shown, that burden switches to the non-moving party.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Where the non-moving party bears the ultimate burden of persuasion on a dispositive issue at trial, the non-moving party must 'go beyond the pleadings' and, by way of affidavits, depositions,

---

[1] With respect to this Motion, the Certain Defendants are Arthur J. Pergament, as Collateral Trustee, and the asbestos claimants represented by the following law firms: Belluck & Fox, LLP; Brayton Purcell, LLP; David M. Lipman, L.P.; Motley Rice, LLC; Simmons Cooper, LLC; and Weitz & Luxenberg, P.C. [Exhibit A to Docket # 48]

answers to interrogatories, or admissions on file "designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 323. The evidence that the non-moving party produces to show the existence of a genuine issue must be of sufficient quantum and quality to allow a rational and fair-minded fact finder to return a verdict in favor of the non-movant, bearing in mind the applicable standard of proof that would apply at trial on the merits. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A dispute of fact exists when a reasonable jury could find for the non-moving party. Id. at 248-49. Facts that could alter the outcome are material and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct. Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (Fed. Cir. 1995)

## Count I

Count I of the Complaint seeks relief pursuant to 11 U.S.C. § 547. That section allows a trustee to avoid any transfer of an interest of the debtor in property that was: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made on or within ninety days before the date of the filing of the petition; and (5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of the Bankruptcy Code; (B) the transfer had not been made; and © such creditor received payment of such debt to the extent provided by the Bankruptcy Code. 11 U.S.C. § 547(b). The trustee or debtor-in-possession bears the burden of proving all five elements of a preference. 11 U.S.C. § 547(g). J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp., 891 F.2d 66 (3d Cir. 1989); In re Jolly "N", Inc., 122 B.R. 897, 902 (Bankr. D.N.J. 1991).

Transfer of an interest of the debtor in property

Before the court can address whether the Debtors have established each of the five elements of a preference, it must first determine if the Debtors transferred an interest in property during the relevant period. The 90-day preference period in this case runs from October 2, 2003. The Bankruptcy Code broadly defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption". 11 U.S.C. § 101(54).[2] The Supreme Court has noted that determining when a transfer is complete and what constitutes a transfer is a matter of federal law, but that defining the specific interest in property is a "creature[ ] of state law." Barnhill v. Johnson, 503 U.S. 393, 398 (1992).

The Debtors contend that : "[t]he Interests transferred to the Partially Secured Asbestos Creditors include alleged liens or security interests created in favor of the Partially Secured Asbestos Creditors in the Asbestos Insurance Collateral, which are the Debtors' property." *Plaintiff's Amended Memorandum of Law* at 15. The Debtors define "Interests" to mean:

> All liens, security interests, obligations, promises to pay, payments, valuations, liquidations, or other claims, rights, or causes of action purportedly granted to the Secured Asbestos Creditors, whether under the Pre-Petition Settlement Agreements, the Claimant Agreement, the Collateral Trust Agreement, the Security Agreement, the Superseding Security Agreement, or otherwise.

*First Amended Complaint* at ¶ 47. It is incontrovertible that the grant of a security interest by a debtor meets the Bankruptcy Code's definition of a transfer. In re Tops Appliance City, Inc., 372

---

[2] The definition of "transfer" was changed as part of the Bankruptcy Abuse and Consumer Protection Act of 2005. The court notes that the Debtors' brief uses the new definition that includes "the creation of a lien". 11 U.S.C. § 101(54)(A). That definition only applies to cases filed on or after October 17, 2005, and this case was filed December 31, 2003.

F.3d 510, 516 n.2 (3d Cir. 2004)("there is no doubt that the term transfer includes the granting of a security interest.")  The more vexing question is when the Debtors transferred the security interest.

The preference section itself provides some guidance.  It states that for the purposes of § 547 a transfer is made:

> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);
> (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days; or
> © immediately before the date of the filing of the petition, if such transfer is not perfected at the later of--
> > (I) the commencement of the case; or
> > (ii) 30 days after such transfer takes effect between the transferor and the transferee.

11 U.S.C. § 547(e)(2).  The statute further provides that for personal property, a transfer is perfected[3] "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."  11 U.S.C. § 547(e)(1)(B).  These statutory definitions are a helpful starting point, but as noted earlier, the court must ultimately look to state law to determine when these transfers were made.  *See*, Barnhill v. Johnson, 503 U.S. 393 (1992).

The Debtors point to the approval of a Participating Asbestos Claimant's settlement amount as the event that gives the Participating Asbestos Claimants an unconditional claim to a portion of the Asbestos Insurance Collateral, and accordingly would qualify as a "transfer" for preference purposes.  The Debtors contend that the Superceding Security Agreement cannot be read in isolation; the court must consider it *in pari passu* with the Claimant Agreement and the Collateral

---

[3] Use of this term in § 547 has led to some confusion because "the term "perfected" has a broader meaning in § 547(e) than it does in the Uniform Commercial Code." Barnhill at 403 (Stevens, J., dissenting).

Trust Agreement to ascertain when the "transfer" of the security interest was complete. Certain Defendants counter that the only transfer of the Debtors' assets that occurred was the grant of the security interest from the Debtors to the Collateral Trustee, and because that occurred well before October 2, 2003 there could be no preference.

To fully understand the arguments, the court must examine how a security interest attaches under state law. For these purposes, it is immaterial whether the court looks to New Jersey law[4] or Delaware law,[5] since the essential provisions are the same. Under Delaware law, a security interest attaches to collateral "when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment." Del. Code Ann. tit. 6, § 9-203(a) (2006). There are three requirements for a security interest to become enforceable:

> (1) value has been given;
> (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
> (3) one of the following conditions is met:
>> (A) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;
>> (B) the collateral is not a certificated security and is in the possession of the secured party under Section 9-313 pursuant to the debtor's security agreement;
>> C) the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under Section 8- 301 pursuant to the debtor's security agreement; or
>> (D) the collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights, or electronic documents, and the secured party has control under Section 7-106, 9-104, 9-105, 9-106, or 9-107 pursuant to the debtor's security agreement.

---

[4] The location of the Debtors and the jurisdiction in which the bankruptcy case is pending

[5] The stated law governing the Claimant Agreement (§ IV(K)) and the Supervening Security Agreement (§ VII).

Del. Code Ann. tit. 6, § 9-203(b).  All of the elements of § 9-203 must be satisfied for a security interest to attach.  In re Bollinger Corp., 614 F.2d 924 (3d Cir. 1980).  The final two elements are not in dispute: the Debtors clearly had an interest in the Asbestos Insurance Collateral satisfying § 9-203(b)(2), and security agreements describing the collateral were signed by the Debtors satisfying § 9-203(b)(3)(A).

The area of contention is when the value was given. The Uniform Commercial Code as adopted in Delaware states that "value" has been given when a person acquires rights "as security for, or in total or partial satisfaction of, a preexisting claim ... or ... [i]n return for any consideration sufficient to support a simple contract."  Del. Code Ann. tit. 6, § 1-204(2), (4).

The Debtors assert that value was given only when they accepted the claim documentation and provided notice of the acceptance; prior to that, the claimant was not a Participating Asbestos Claimant and thus not eligible to participate in the Claimant Agreement.  The lynchpin of that argument is that the releases provided by the Participating Asbestos Claimants are what constituted the value transferred.  Certain Defendants counter that such an argument is premised on the faulty assumption that a security interest was transferred directly to the Asbestos Claimants.  Rather, Certain Defendants argue that the most any of the asbestos creditors received was a beneficial interest in the Collateral Trust.

An examination of the essential documents bears out some of the Certain Defendants contentions.  The Superceding Security Agreement dated June 11, 2003 grants a security interest to the Collateral Trustee, not to the individual claimants.  The Security Agreement provides that "[t]he security interests that are granted to the Collateral Trustee hereunder shall constitute at all times prior to payment in full of Congoleum's Liabilities valid perfected, matured security interests

7

upon all of the collateral described above." *Superceding Security Agreement* at II(D). The Agreement further provided that it was effective when signed. *Superceding Security Agreement* at V©. Nothing in the Security Agreement made the grant of the security interest contingent on compliance with the terms of the Claimant Agreement.

Accordingly, if the Certain Defendants analysis of when value was given holds true, then there was no transfer during the preference period. Certain Defendants point to two possible times when value was given: either at the execution of the Claimant and the Security Agreements, or when the claimants agreed to a 150-day litigation moratorium. Certain Defendants argue that it is irrefutable that the execution of the Claimant Agreement conferred value because it "set into motion a settlement mechanism by which the Debtor was able to settle millions of dollars of claims without further litigation." *Certain Defendants' brief in support of response to plaintiff's motion for summary judgment* at 16.

The difficulty with that argument is that neither of those items of value were the Collateral Trustee's to give. It is only the claimants themselves that were able to agree to the settlement procedure embodied in the Claimant Agreement or to agree to a litigation moratorium. The Collateral Trustee did not have a preexisting claim against the Debtors. As a result, the Collateral Trustee did not have, and could not give, any value in exchange for the security interest that was granted to him. Without value, there can be no attachment under the U.C.C.

The answer to that conundrum, however, lies in the plain language of § 9-203. Section 9-203(b)(1) states that one of the requirements for the attachment of a security interest is that "value has been given." It does not specify who must give the value. When the actor is significant, the statute is specific, i.e, "the debtor has rights in the collateral" or "the debtor has authenticated a

8

security agreement". § 9-203(b)(2) and (3)(A). When the terms of the statue are clear, the court's only role is to enforce the statute as it is written. <u>United States v. Gonzales</u>, 520 U.S. 1 (1997). As stated by a leading commercial law commentator: "the value requirement of section 9-203 will be generally readily met so long as the secured party *or another on his behalf* has provided anything that would constitute present or past consideration for the security interest." 8 Hawkland UCC Series § 9-203:11 (emphasis added). Therefore, as long as what was given by the claimants constitutes value, then all of the pre-requisites for attachment have been met.

One of the definitions of value in the U.C.C. is: "any consideration to support a simple contract." Del. Code Ann. tit. 6, § 1-204(4). Delaware courts have consistently found that the consideration needed to make a contract enforceable can "consist[] of a benefit to a promisor, or detriment to a promisee." <u>Street Search Partners, L.P. v. Ricon Intern., L.L.C.</u>, 2006 WL 1313859, *4 (Del. Super. May 12, 2006); <u>First Mortgage Co. of Pa. v. Fed. Leasing Corp.</u>, 456 A.2d 794 (Del. 1982). Here, we have a clear benefit to the Debtors in the form of relief from a torrent of tort claims, thereby freeing the Debtors to concentrate on their business. *Claimant Agreement* at 2 ("Congoleum wishes to settle the Asbestos Claims asserted by Asbestos Claimants in order to attain certainty as to its asbestos-related liability to Participating Asbestos Claimants so that it may concentrate its attention on the operation of its business ...") Accordingly, the court finds that value was given at the time the Claimant Agreement was signed on April 10, 2003.

Even if the promise of future settlements were not enough to constitute value, a more tangible benefit was given to the Debtors in the form of a 150-day litigation moratorium. The Claimant Agreement provided that: "Congoleum and each Asbestos Claimant that has submitted the documents and information pursuant to Section I.B.1 agree to a 150-day litigation moratorium,

9

commencing from the Effective Date [April 10, 2003], during which such Asbestos Claimant shall not pursue any lawsuit or other legal process with respect to any claim against Congoleum ..." *Claimant Agreement* § V. The Section I.B.1 information, also referenced as the adoption agreement, was originally due by May 15, 2003, but the Amended Claimant Agreement extended that deadline to July 15, 2003. As a result, every asbestos creditor that ultimately became a Participating Asbestos Creditor would have been bound by that litigation moratorium by no later than July 15, 2003, a date well before the commencement the preference period on October 2, 2003. *See* Personal Jet, Inc. v. Callihan, 624 F.2d 562 (5th Cir. 1980)(forbearance of a foreclosure suit constituted value sufficient to support granting a security interest).

The court must now return to § 547 to determine if the attachment of the security interest was within the preference period. That section provides that a transfer of personal property is perfected "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). Here, that would have been when the financing statement was filed. *See*, Del. Code Ann. tit. 6, § 9-317. That occurred on June 13, 2003, two days after the Superceding Security Agreement was executed. Accordingly, for purposes of § 547(e)(2)(A) the date of the transfer was June 11, 2003, when the parties signed the Superceding Security Agreement. That was six months prior to the petition date and over three months prior to the beginning of the preference period on October 2, 2003. Subsequently, when the claimants' documentation was approved and they became Participating Asbestos Claimants, they were not receiving a transfer of a security interest from the Debtors; rather they were becoming beneficiaries of the security interest granted to the Collateral Trustee.

Since the Debtors have not established that they transferred an interest in estate property during the relevant preference period, there is no need to address whether the five elements of a preference were satisfied. The Debtor's motion for summary judgment on Count I is denied. Although there is not technically a cross motion for summary judgment by the Defendants, the court's analysis compels that result. Defendants should submit a form of order consistent with this opinion.

### Count II

Count II of the Complaint seeks relief pursuant to 11 U.S.C. § 549. The transfer of property of the estate is a pre-requisite to relief under § 549(a). Therefore, Count II suffers from the same deficiencies as Count I and summary judgment must be denied. Defendants should likewise address this count in their form of order consistent with this opinion

### Conclusion

The Debtors motion for summary judgment on Counts I and II of their First Amended Complaint is denied. Given the court's reasoning on this motion, there is no need to proceed to trial on those counts. Summary judgment will be entered on Counts I and II in favor of all of the defendants. Counsel for Certain Defendants should submit a form of order to that effect.

_____
KATHRYN C. FERGUSON, USBJ
US Bankruptcy Court

Dated: June 19, 2006