**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

CONGOLEUM CORPORATION, et al.,

      Debtors and Debtors-in-Possession           Chapter 11
                                           Case No. 03-51524 (KCF)

                                           Adversary No. 05-06245

- - - - - - - - - - - - - - - - - - - - - - - - - -X
CONGOLEUM CORPORATION, et al.,

      Plaintiff,

          vs.

ARTHUR J. PERGAMENT, as the
collateral trustee of the collateral trust,
et al.,

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - -X
**OPINION**

**APPEARANCES:**

Pillsbury Winthrop, Shaw, Pittman
Richard Epling, Esq.
Kerry Brennan, Esq.
John Pritchard, Esq.
1540 Broadway
New York, New York 10036
Attorneys for the Debtors

Connell, Foley, LLP
Stephen V. Falanga, Esq.
85 Livingston Avenue
Roseland, New Jersey 07068
Attorney for Travelers Insurance Co.,
The Travelers Indemnity Co., and Travelers Casualty and Surety Co.

Simpson, Thacher & Bartlett
Katherine McLendon, Esq.
425 Lexington Avenue
New York, New York 10017
Attorney for Travelers Insurance Co.,The Travelers Indemnity Co., and
Travelers Casualty and Surety Co.

O'Melveny & Myers, LLP
Barbara Alameda, Esq.
Times Square Tower
7 Times Square
New York, New York 10036
Attorney for Century Indemnity, ACE American Insurance

Otterbourg, Steindler, Houston & Rosen, PC
Melissa Hager, Esq.
230 Park Avenue
New York, New York 10169
Attorney for Wachovia Bank

Goldstein Isaacson
Nancy Isaacson, Esq.
100 Morris Avenue
Springfield, New Jersey 07081
Attorney for Official Unsecured Asbestos Claimant's Committee

Seward & Kissel, LLP
Laurie Binder, Esq.
One Battery Park Plaza
New York, New York 10004
Attorney for Employers Insurance of Wausau

Caplin & Drysdale
Ronald E. Reinsel, Esq.
1 Thomas Circle
Washington, D.C.
Attorney for Asbestos Personal Injury Claimants' Committee

Orrick, Herrington, & Sutcliffe
Jonathan P. Guy, Esq.
1512 15th Street, N.W.
Washington, D.C. 20007
Attorney for Future Claimants' Representative

Teich Groh
Michael Zindler, Esq.
691 Route 33
Trenton, New Jersey 08619
Attorney for Official Bondholders Committee

Stutzman, Bromberg, Esserman & Plifka
Van Hooker, Esq.
2323 Bryan Street #2200
Dallas, Texas 75201
Attorney for Certain Defendants

Stark & Stark
Jeffrey S. Posta, Esq.
993 Lenox Drive
Princeton, New Jersey 08543
Attorney for Campbell, Harrison, et al.

Akin, Gump, Strauss, Hauer & Feld
Michael Stamer, Esq.
Michele Roberts, Esq.
590 Madison Avenue
New York, New York 10022
Attorneys for Official Committee of Unsecured Bondholders

Akin, Gump, Strauss, Hauer & Feld
James Savin, Esq.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20030
Attorneys for Official Committee of Unsecured Bondholders

**THE HONORABLE KATHRYN C. FERGUSON, U.S.B.J.**

**DISCUSSION**:

This opinion resolves the Debtors' Motion for Summary Judgment on Counts XVII,

XVIII, XIX, and XX of the Third Amended Complaint. The Court took oral argument on this matter

on November 5, 2007, and reserved decision.

**Factual Background**

Faced with pending asbestos personal injury claims, Plaintiff, Congoleum Sales, Inc., and

Congoleum Fiscal, Inc. (collectively, the "Debtors"), sought to obtain coverage from its primary

insurance carriers pre-petition. Through August 2002, substantially all asbestos-related claims and

defense costs were paid through primary insurance coverage. However, in March 2001 and then

again in August 2002, Congoleum received notice from its two lead primary insurance carriers that

its primary insurance coverage was exhausted. During the period following August 2002,

Congoleum faced a situation in which its primary insurers claimed that their policies were

exhausted. At the same time, its excess carriers claimed that the primary layers were not exhausted

and, therefore, excess coverage was not available. This impasse left Congoleum with no carriers

defending claims and paying legal settlement costs.

Due to the coverage dispute with its insurers, Congoleum sought to defer trial dates and to

settle cases for the promise of an assignment of insurance proceeds whenever possible in order to

conserve cash.  In those instances where asbestos claimants refused to accept an assignment of

insurance proceeds and settlement was essential to avoid trial, Congoleum paid cash. Pre-petition,

Congoleum settled approximately 61 claims through agreements to assign, in the future, certain

unidentified insurance proceeds. Congoleum also entered two other settlement agreements involving

70 claims in which Congoleum agreed to pay an aggregate of approximately $90,000 in cash, but

4

payments were not made on such agreements. These agreements are referred herein as the Pre-Petition Settlement Agreements.[1]

In November 2002, Congoleum commenced preliminary discussions with the Claimants' Representative, who represented the largest number of holders of Settled Asbestos Personal Injury Claims that would become Qualified Participating Claimants, regarding the concept of an inventory settlement and a potential Joint Prepackaged Plan of Reorganization in order to resolve claims of parties alleging asbestos-related bodily injuries. On April 10, 2003, a Claimant Agreement was executed, under which the payment of settlement amounts to each claimant that qualified under its terms were to be partially secured by a security interest in certain enumerated Congoleum insurance policy collateral. Under the terms of the Claimant Agreement, the amounts due to Qualified Participating Claimants were fixed by a compensable disease matrix attached to the Claimant Agreement. The aggregate amount of all settlements of the claims of the Qualified Participating Claimants is approximately $465,000,000.

On December 31, 2003 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On December 2, 2005, the Plaintiff filed the original complaint in this adversary proceeding.

---

[1] In the New York Supreme Court, an asbestos personal injury liability trial returned a damages verdict of $33 million in the Cook and Arsenault cases. A settlement of $800,000 in cash for each case and an agreement to provide a security interest in insurance proceeds for the balance was reached. Additionally, a settlement of $3 million was reached with another pre-petition claimant, Dennis Matthews, which was to be funded by an assignment of certain insurance proceeds. Apart from the correspondence documenting the Cook, Arsenault and Matthews settlements, prior to the Petition Date, Plaintiff entered into letter agreements to assign in the future insurance proceeds with counsel for the Qualified Pre-Petition Settlement Claimants.

On February 7, 2006, the Court entered an order granting Plaintiff's motion for leave to file the First Amended Complaint nunc pro tunc to December 30, 2005. The Official Committee of Bondholder (the "Bondholders' Committee") and the Future Claimants' Representative (the "FCR") filed separate motions to intervene, which were granted by order of the Court on April 25, 2006 and May 9, 2006, respectively.

On March 16, 2006, the Debtors filed a motion for summary judgment with respect to the issues in Counts I and II of the First Amended Complaint. Such motion sought the avoidance of purported liens and security interests granted to the Secured Asbestos Claimants named as defendants and the allowance of liquidated settlement amounts with respect to these claims during the ninety days before the Petition Date as voidable preferential transfers. The motion also sought the avoidance of purported liens and security interests granted to the Secured Asbestos Claimants named as defendants and the allowance of liquidated settlement amounts with respect to these claims after the Petition Date, as voidable post-petition transfers.

On June 19, 2006, the Court issued an opinion ("Security Avoidance Opinion") denying the Debtors' summary judgment motion, and granting summary judgment on Counts I and II in favor of all of the defendants in this proceeding. The Bankruptcy Court held that when the claimants' documentation was approved, they did not receive a transfer of a security interest from the Debtors, but rather became beneficiaries of a security interest granted to the Collateral Trustee. An order denying the Debtors' summary judgment motion and granting summary judgment in favor of the defendants was entered by the Court on July 31, 2006.

On November 7, 2006, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, which the Court granted by order on December 1, 2006. By the Second Amended

6

Complaint, the Plaintiff added as defendants all holders of Secured Asbestos Claims who signed tolling agreements with the Plaintiff prior to the filing of the Original Complaint, and who therefore had not previously been named as defendants in this proceeding. The Second Amended Complaint also includes amendments to Counts XI and XVI, wherein the Plaintiff has sought to disallow any claims of defendants Joseph F. Rice, the law firm of Motley Rice LLC, Perry Weitz, and the law firm of Weitz & Luxenberg, P.C. against Plaintiff with respect to the recovery of certain pre-petition transfers pursuant to 11 U.S.C. § 502(d).

On February 1, 2007, the Court issued an opinion ("Plan Opinion") denying confirmation of the Debtor's and the Official Committee of Unsecured Asbestos Claimants Second Modified Joint Plan Of Reorganization, as well as the Debtor's Tenth Modified Plan filed by Creditor Twin City Fire Insurance Company, Creditor First State Insurance Co.

On May 18, 2007, the State Court issued its decision ("Coverage Action Opinion") with respect to Phase I insurance coverage, Congoleum Corporation v. Ace American Ins. Co., et al., Docket No. MID-L -8908-01. On June 7, 2007, the Debtor filed an Omnibus Objection to Settled Asbestos Personal Injury Claims of All Qualified Pre-Petition Settlement Claimants and All Qualified Participating Claimants (the "Omnibus Objection"). The Omnibus Objection reflected the Plan Summary Judgment Opinion and the State Court Coverage Action Decision. However, on July 27, 2007, this Court issued the Omnibus Objection Opinion holding that the proper procedural framework was to file an adversary proceeding.

On August 14, 2007, the Debtor filed a motion to file a Third Amended Complaint, which the Court granted on September 5, 2007. That Complaint added Counts XVII, XVIII, XIV, and XX. On September 17, 2007, First Insurance Company and Creditor First State Insurance Company (as

well as numerous other insurers) filed a motion to intervene as to Counts XVII, XVIII, XIV, and XX of the Third Amended Complaint. The Court denied that request on October 9, 2007.

On October 12, 2007, the Plaintiff/Debtors move for summary judgment with respect to Counts XVII, XVIII, XIV, and XX of their Third Amended Complaint ("Complaint"). The Official Committee of Bondholders joins the Debtor's motion. The Unsecured Claimant's Asbestos Committee ("ACC")[2], as well as Certain Defendants[3] represented by the law firms of Levitt & Slafkes, P.C., and Stutzman, Bromberg, Esserman & Plifka, P.C., oppose the motion. Certain Asbestos Claimants represented by Cire & Pletcher, LLP, Paul L. Sadler, Esq., the law firm of Richardson, Patrick, Westbrook & Brickman, LLC, the law firm of **Campbell, Harrison, Davis, Dove & Steakley**, the law firm of **Louis H. Watson, Jr., P.A.**, the **Eaves Law Firm**, and the law firm of **Goldberg, Persky & White, P.C.**, join in the opposition.

**Standard of Review**

Summary judgment should not be lightly granted. The Supreme Court has stated that "[i]t is appropriate only when there is no genuine issue of material fact and when the moving party is

---

[2] Subsequent to the filing of this motion, on December 11, 2007 the Court entered a stipulation between Debtors and the ACC to allow the ACC to appear and be heard in the Omnibus Adversary Action regarding any issue that the ACC may deem relevant to the rights of its general unsecured asbestos claimant constituency.

[3] The Asbestos Claimants are the individuals represented by the following law firms (and listed on the referenced exhibits to the Complaint): (I) Belluck & Fox, LLP (Exhibit 3); (ii) Brayton Purcell, LLP (Exhibit 5); (iii) David M. Lipman, L.P. (Exhibit 10); (iv) Heard, Robins, Cloud & Lubel, LLP (Exhibit 12); (v) Hissey, Kientz, & Herron, PLLC (Exhibit 13); (vi) Motley Rice, LLC (Exhibit 19); (vii) SimmonsCooper, LLC (Exhibit 30); (viii) Weitz & Luxenberg, P.C. (Exhibit 32); (ix) Baron & Budd, P.C. (Exhibit 39); (x) Brent Coon & Associates (Exhibit 41); (xi) The David Law Firm (Exhibit 49); (xii) Early, Ludwick, Sweeny & Strauss (Exhibit 51); (xiii) Kazan, McClain, Abrams, Fernandez, Lyons, & Farrise, PC (Exhibit 61); (xiv) The Law Office of G. Patterson Keahey, P.C. (Exhibit 64); (xv) The Law Offices of Peter G. Angelos (Exhibit 69); (xvi) Morris, Sakalarios & Blackwell (Exhibit 76); (xvii) Norris & Phelps, PLLC (Exhibit 77); (xviii) Provost & Umphrey Law Firm, LLP (Exhibit 81); (xix) The Shein Law Center (Exhibit 83); (xx) Thornton & Naumes, LLP, (Exhibit 86); (xxi) Waters & Kraus, LLP (Exhibit 88); and (xxii) Wilentz, Goldman & Spitzer, PC (Exhibit 90).

entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); Fed. R. Civ. Pro. 56(c). The party moving for summary judgment has the burden of establishing the nonexistence of any "genuine issues of material fact." <u>Id.</u> Summary judgment should be denied if a reasonable jury, based on that evidence, could return a verdict for the nonmoving party. <u>In re CitX Corp., Inc.</u>, - F.3d -, 2006 WL 1453117 (3d Cir. May 26, 2006); <u>Tran v. Metropolitan Life Ins. Co.</u>, 408 F.3d 130, 135 (3d Cir. 2005). The Third Circuit has stated that whenever there is even the "slightest doubt regarding the facts of a case, summary judgment should not be granted." <u>Tomalewski v. State Farm Life Ins. Co.</u>, 494 F.2d 882, 884 (3d Cir. 1984),

The moving party bears the burden of proving that there is no issue of material fact, though once shown, that burden switches to the non-moving party. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Where the non-moving party bears the ultimate burden of persuasion on a dispositive issue at trial, the non-moving party must "go beyond the pleadings" and, by way of affidavits, depositions, answers to interrogatories, or admissions on file "designate specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 323. The evidence that the non-moving party produces to show the existence of a genuine issue must be of sufficient quantum and quality to allow a rational and fair-minded fact finder to return a verdict in favor of the non-movant, bearing in mind the applicable standard of proof that would apply at trial on the merits. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). A dispute of fact exists when a reasonable jury could find for the non-moving party. <u>Id.</u> at 248-49. Facts that could alter the outcome are material and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct. <u>Horowitz v. Federal Kemper Life Assurance Co.</u>, 57 F.3d 300, 302 n.1 (Fed. Cir. 1995).

## **Count XVII**

Prior to the Debtor's filing Bankruptcy, many of the Pre-Petition Asbestos Claimants (the "Qualified Pre-Petition Settlement Claimants" or "Class 2" Claimants)[4] entered into individual settlement agreements with the Debtor to resolve their claims. *See generally* Brennan Dec. Ex. B. While each Class 2 settlement agreement was negotiated individually, a common element was that all or a portion of the settlement amount was to be paid through the receipt of an assignment of insurance proceeds from the Debtor. Id. In exchange, the Debtor was given a release of all claims alleged by the Pre-Petition Settlement Claimants, thus discharging Congoleum from any further monetary obligations with respect to such asbestos claims. Id. The Debtor now seeks to enforce the Class 2 releases in Count XVII of the Complaint by seeking "to disallow and expunge the claims settled under the pre-petition settlement agreements with prejudice because they are non-recourse to Congoleum and any property of the estate, including Congoleum's insurance policies." *See* Third Amended Complaint, Count XVII.

In its motion for summary judgment, the Debtor argues that it has now, in good faith, fully performed its obligation "to pursue insurance proceeds" on behalf of the Class 2 Claimants by *attempting* to obtain insurance proceeds through litigation in the State Court Coverage Action ("Coverage Action").[5] In support of this position, the Debtor points to a March 26, 2003 letter agreement ("Letter Agreement") which, in the Debtor's estimation, speaks to assignment of proceeds rather than receipt of proceeds. *See* Brennan Dec. Ex. B. As an alternative theory, the Debtor contends that although the State Court did not address the issue of coverage for the Qualified

---

[4] This motion pertains to those Pre-petition Asbestos Claimants identified in the fact section.

[5] The Court notes that the Debtor has acknowledged the fact that it does not intend to pursue an appeal of the State Court Coverage Action.

Pre-Petition Settlement Claimants (Class 2), the State Court *will likely* determine that such claimants are not entitled to insurance coverage under the Pre-Petition Settlement Agreements. Essentially, the crux of the Debtor's argument is that it has upheld its end of the agreement with each Class 2 Claimant and, therefore, it should be permitted to enforce the releases it received in exchange.

In response to the Debtor's assertions, those opposing the motion argue that Congoleum has not upheld its end of the bargain. The opposition argues that the Class 2 Claimants gave releases in consideration for insurance *proceeds*, but instead received a *security interest* in insurance claims and proceeds. The opposition notes that in its July 27, 2007 Security Avoidance Opinion, this Court granted the Debtor's motion for summary judgment on Counts V and VI of the Debtor's Second Amended Complaint, holding that "the attempted grant of a security interest was ineffective because the transaction was outside the scope of Article 9 of the UCC and cannot be considered a common law pledge." Security Avoidance Opinion, at p. 12. Thus, because this Court has previously ruled that the security interest purportedly granted to the Class 2 Claimants was not valid, the opposition contends that there was no consideration provided by Congoleum for the releases given by the Class 2 Claimants.

In response to the opposition, the Debtor argues that the consideration for the releases was the assignment of proceeds, or the security interest itself, which was invalidated by this Court's July 27, 2007 Opinion despite Congoleum's "best efforts" to uphold said interest. The Debtor further asserts that these security agreements were based on previous asbestos cases and that the Class 2 Claimants knew full well what they were getting. Lastly, the Debtor argues that it did not breach the security agreements, but rather acted pursuant to its power as debtor-in-possession under section 544 to avoid the security interests purportedly conveyed to the Collateral Trustee on behalf of, or directly

11

to, Class 2 and Class 3 Claimants.

As the Third Circuit noted in Enterprise Energy Corp. v. United States (In re Columbia Gas Systems):

> Generally, application of the Bankruptcy Code does not change the attributes of a given legal relationship. Butner v. United States, 440 U.S. 48, 59 (1979). Thus, if the settlement agreement should be considered a contract under relevant nonbankruptcy law, it will be a contract in bankruptcy "unless some federal interest requires a different result . . . ." Id. at 55.
>
> Although settlement agreements may be judicially approved, they share many characteristics of voluntary contracts and are construed according to traditional precepts of contract construction. cf. Fox v. United States Dep't of Housing & Urban Dev., 680 F.2d 315, 319 (3d Cir. 1982) (observing this point for consent decrees). In a nonbankruptcy context, we have treated a settlement agreement as a contract. See Halderman v. Pennhurst State Sch. & Hosp., 901 F.2d 311, 318 (3d Cir.), cert. denied, 498 U.S. 850, 112 L. Ed. 2d 107, 111 S. Ct. 140 (1990).

50 F.3d 233, 238 (3d Cir. 1995). As further explained in Avatar Bus. Connection, Inc. v. Uni-Marts, Inc.:

> [t]he interpretation or construction of a contract is usually a legal question for the court, 'suitable for a decision on a motion for summary judgment.'" Driscoll Constr. Co. v. State Dep't of Transp., 371 N.J. Super. 304, 313, 853 A.2d 270 (App. Div. 2004) quoting Newport Assocs. Dev. Co. v. Travelers Indem. Co. of Illinois, 162 F.3d 789, 792 (3d Cir. 1998). In these instances, the court's "primary objective in interpreting a contract is to derive the objective intent of the parties at the time of the making of the contract." TIG Ins. Co. v. Combustion Eng'g, Inc. (In re Combustion Eng'g, Inc.), 366 F. Supp. 2d 224, 229 (D.N.J. 2005); see also Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980) (in interpreting a contract, a court's paramount consideration is the intent of the parties.)

2005 U.S. Dist. LEXIS 37506, *24-25 (D.N.J. 2005). Thus, the Court must look to the terms of the settlement agreements, including the objective expectations of the parties, in order to determine

whether the essential elements of the settlement agreements were fulfilled.

It has been held that "[t]he pertinent principles of contractual construction are straightforward" and "[t]he court makes the determination whether a contractual term is clear or ambiguous." Schor v. FMS Financial Corporation, 357 N.J. Super. 185, 191 (App. Div. 2002) (citing Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 282 (D.N.J. 1992)). An ambiguity exists if the "terms of the contract are susceptible to at least two reasonable alternative interpretations." Schor, 357 N.J. Super. at 191. As a general rule, the "terms of the contract must be given their plain and ordinary meaning." Id. (quoting Kaufman, 828 F. Supp. at 283) (internal quotations omitted). Accordingly, "where the terms of the contract are clear and unambiguous there is no room for interpretation and construction and the courts must enforce those terms as written." Id. (quoting Karl's Sales and Service, Inc. v. Gimbel Bros., Inc., 249 N.J. Super. 487, 493 (App. Div. 1991)) (internal citations omitted). The court will not rewrite a clearly written contract or "remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other." Id. at 192. (citing James v. Federal Ins. Co., 5 N.J. 21, 24 (1950)). However, "[w]here...a contract is free from ambiguity, evidence of the situation of the parties and the surrounding circumstances and conditions is admissible in order to aid in interpreting the contract." Avatar Bus. Connection, Inc. v. Uni-Marts, Inc., 2005 U.S. Dist. LEXIS 37506, at *36-37.

In this case, it is undisputed that the Class 2 Claimants did not receive full payment from insurance proceeds in satisfaction of their claims. Whereas the Debtor maintains that the Class 2 Claimants did in fact receive the benefit of the settlement agreements - a security interest in insurance proceeds - this Court finds that in light of the language of the security agreements

themselves, it is not reasonable that the Class 2 Claimants expected to be satisfied in full by the mere

granting of a security interest. To the contrary, the evidence demonstrates that the Class 2 Claimants

expected to be *fully paid* in consideration of granting Congoleum a release. For example, the March

26, 2003 Letter Agreement referenced by the Debtor states:

> This letter ("Letter Agreement") confirms an agreement between
> Congoleum Corporation ("Congoluem") and your firm as counsel for
> the attached list of claimants ("Claimants"). It is the intent of the
> parties in entering into this Letter Agreement to fully and finally
> settle all claims alleged by Claimants against Congoleum, for the
> individual demands set forth on the attached list [which lists a
> monetary settlement amount relative to a particular claimant], by
> grant of an assignment of certain insurance proceeds in the total
> amount of $XX.xx [depending on the individual claimant].
> Congoleum shall undertake to prepare documents finalizing such an
> assignment. The parties further agree that this Letter Agreement is
> subject to the receipt of a signed release from each Claimant.
>
> Please countersign in the space provided if this letter accurately
> reflects the agreement Congoluem and Claimants.

Brennan Dec. Ex. B, Part 1 of 21. While the Debtor is correct in noting that this Letter Agreement

discusses assignment of "proceeds," the Court is satisfied that the term "proceeds" means the funds

themselves, not some inchoate right to collect the funds. Even the Letter Agreement advanced by

the Debtor suggests that these Claimants intended to settle their claims and give a release in

exchange for receipt of actual funds.

Moreover, a sample of the Pre-petition Settlement Agreements themselves contains language

throughout the document demonstrating similar expectations:

> WHEREAS, in order to avoid further time, expense and uncertainties
> of litigation, CONGOLEUM CORPORATION and the undersigned
> PLAINTIFFS desire to enter into a final compromise and
> settlement....
>
> THAT the undersigned PLAINTIFFS, **for an in consideration of**

14

> **FORTY-FIVE THOUSAND DOLLARS AND NO/100 ($45,000.00)**, pursuant to the assignment of insurance, as set forth in Congoleum's Prepack Settlement Agreement...
>
> This agreement is conditioned upon the issuance of the above-described consideration and shall be void **if the consideration is not paid in full...**

Brennan Dec. Ex. B, Part 1 of 21. In light of the above language, the Court finds that the Class 2 settlement agreements are clear on their face and should not be rewritten to favor one party over the other. Contrary to the Debtor's assertion, the Court finds that the Class 2 Claimants clearly expected to receive payment, in a determined monetary amount, in exchange for providing Congoleum with a release of claims. It would be unreasonable to hold that the Class 2 Claimants expected to be fully compensated by being solely provided with a security interest in those proceeds. At best, the security agreement was a vehicle in which Congoleum attempted to pay a predetermined monetary amount to each Class 2 Claimant and to defer any obligation to pay actual proceeds until the conclusion of the coverage litigation. Moreover, even if the Court had validated the security interest in its July 27, 2007 Opinion, the Class 2 Claimants still have not been paid and would have claims for their alleged injuries. The Court's avoidance of the security agreement is not tantamount to avoiding the Class 2 Claimants' claims altogether.

The Court also notes that the Debtor's argument that the Class 2 Claimants' claims should be expunged because those claims merged into the Claimant Agreement is not persuasive. The Class 2 Claimants were not parties to the Claimant Agreement and did not sign additional releases binding them to that agreement. Rather, the Debtor unilaterally extended the Claimant Agreement to the Class 2 Claimants. Nor are the Class 2 Claimants bound by the decision in the State Court Coverage Action, as they were not parties to that litigation. That decision dealt solely with the Debtor's

15

insurers' obligation to provide coverage related to the Class 3 Claimants, holding that "[t]he defendant insurers...reasonably declined to provide coverage to Congoleum for the Claimant Agreement [Class 3 Claimants] on multiple grounds...." State Court Coverage Action, Brennan Dec. Ex. M, at pp.11-12. Clearly, such a holding does not preclude the Class 2 Claimants from asserting claims against Congoleum. In fact, the State Court has yet to address the issue of insurer coverage with respect to the Class 2 Claims.

Lastly, it is important to note that the Debtor has acknowledged the fact that it does not intend to pursue an appeal of the State Court Coverage Action. In the same breath, however, the Debtor argues that it has put forth its "best efforts" by litigating said action. This argument is disingenuous. The Debtor has decided on its own that pursuing an appeal is futile and that resting on the State Court ruling is somehow equivalent, in and of itself, to "best efforts." *See* Debtor's Corrected Memorandum of Law, at p. 34. Such an interpretation essentially allows the Debtor to unilaterally decide when "enough is enough" and should not be permitted.

In light of the foregoing, the Court finds that the Class 2 settlement agreements must fail for lack of consideration on the part of Congoleum. Thus, the Debtor's motion for summary judgment with respect to Count XVII is denied as to the Debtor and granted in favor of the Defendants.

## Count XVIII

It is also undisputed that the Class 3 Claimants did not receive full payment in satisfaction of their claims. Rather, they received a secured interest in insurance proceeds for 75% of their claim, plus an unsecured claim of 25%. *See* Brennan Dec. Ex. I, Claimant Agreement; Exhibit K, Superceding Security Agreement. As with the Class 2 settlement agreements, the Class 3 settlement agreement ("Claimant Agreement") includes language clearly demonstrating that the Class 3

Claimants expected to receive an actual payment amount. Support for this can be found throughout

the Claimant Agreement:

> WHEREAS, Congoleum entered into settlement agreements prior to this Claimant Agreement **to resolve certain Asbestos Claims**, under which some or all of the consideration **has yet to be paid** (the "Pre-Existing Settlement Agreements")....
>
> WHEREAS, Congoleum and Claimants' Counsel, on behalf of Participating Asbestos Claimant (as defined below), wish to resolve and settle, **in the amounts set forth in the compensable disease matrix** attached hereto as Appendix A ("Compensable Disease Matrix"), all of the Asbestos Claims asserted by Asbestos Claimants who qualify as Participating Asbestos Claimants (as defined below) and to secure, in part, payment of the amounts for which such Asbestos Claims are settled by the grant of a security interest in the Collateral (as defined in the Security Agreement); and
>
> WHEREAS, Congoleum wishes to settle the Asbestos Claims asserted by Asbestos Claimants **in order to attain certainty as to its asbestos-related liability** to Participating Asbestos Claimants so that it may concentrate its attention on the operation of its business;
>
> WHEREAS, Congoleum **anticipates** that it will commence a reorganization case under chapter 11 of the U.S. Bankruptcy Code...

Brennan Dec. Ex. I, Claimant Agreement, at p. 2. The Amended Claimant

Agreement lends further support, stating in part:

> A. The Security Interest contemplated by the Superceding Security Agreement shall secure an amount equal to seventy-five (75%) of the aggregate of all Participating Asbestos Claimants' Settlement Amounts (the "Secured Amount") as provided in the Collateral Trust Agreement and the Superceding Security Agreement. Congoleum's obligation **to pay each Participating Asbestos Claimant its pro rata share of the Secured Amount** shall be referred to herein as the "Secured Asbestos Claims."
>
> B. Until all of the Secured Asbestos Claims for all Participating Asbestos Claimants **are paid in full**, Congoleum shall evaluate, bring, prosecute, litigate, defend and settle any claim against its insurers to obtain Insurance Proceeds...

17

Brennan Dec. Ex. I, First Amended Claimant Agreement, at p. 4. As with the Class 2 Claimants, the Court finds that the language contained in the Claimant Agreement and the Amended Claimant Agreement clearly shows that the Class 3 Claimants expected to receive payment, in a pre-determined monetary amount, in exchange for providing Congoleum with a release of their claims, as well as a 150-day moratorium on litigation. Holding otherwise would allow the Debtor to retain the benefit of its bargain to the detriment of the Class 3 Claimants. Accordingly, the Debtor's motion for summary judgment with respect to Count XVIII is denied as to the Debtor and granted in favor of the Defendants.

## Count XIX

As an alternative theory, the Debtor has also plead in Count XIX "to expunge without prejudice claims settled under the Pre-Petition Settlement Agreements and the Claimant Agreement because the purpose of those agreements has been frustrated by intervening events." *See* Third Amended Complaint, Count XIX. The Debtor argues that both Congoleum, as well as both the Class 2 and Class 3 Claimants, "entered into the Claimant Agreement, the Security Agreement and the Collateral Trust Agreement . . . to move towards a consensual Bankruptcy Code § 524(g) plan of reorganization that would provide for an orderly and efficient means of allowing and paying tens of thousands of asbestos-related claims and provide the business with the substantial benefit of a channeling injunction against future claims."[6] *See* Debtor's Corrected Memorandum of Law, at p. 38. The Debtor now argues, however, that subsequent intervening judicial decisions have frustrated the purpose of these agreements, including this Court's application of In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2005) to its Plan Summary Judgment Opinion denying confirmation.

---

[6] As discussed, infra, the Court does not buy into Debtor's argument that the Class 2 Claimants merged into the Claimant Agreement.

18

It should be noted that many, but not all, Class 3 Claimants do not oppose the relief sought in Count XIX. With respect to the Class 2 Claimants, however, counsel for those parties argue that the primary purpose of the Pre-Petition Settlement Agreements was to avoid the risk, time and expense of a trial and avoid the possibility of a much larger judgment. Accordingly, because the Debtors have managed to avoid trial on said claims, these defendants argue that the primary purpose has not been frustrated.

The Third Circuit recognizes the principle of frustration of purpose. *See* Kroblin Refrigerated Xpress, Inc. v. Pitterich, 805 F.2d 96, 102 (3d Cir. 1986); Chase Manhattan Bank v. Iridium Afr. Corp., 474 F. Supp. 2d 613, 620 (D. De. 2007). The Restatement 2d of Contracts, § 265 - Discharge by Supervening Frustration  - states the following:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of  Contracts, § 265. Comments A and B to § 265 further explain the rationale behind the rule, stating in part:

> a.  Rationale.  This Section deals with the problem that arises when a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract. ...The rule stated in this Section sets out the requirements for the discharge of that party's duty. First, the purpose that is frustrated must have been a **principal purpose** of that party in making the contract. It is not enough that he had in mind some specific object without which he would not have made the contract. The object must be so completely the basis of the contract that, **as both parties understand**, without it the transaction would make little sense. Second, the frustration must be substantial. It is not enough that the transaction has become less profitable for the affected party or even

19

that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract. Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made...

b. Limitations on scope. The rule stated in this Section is subject to limitations similar to those stated in § 261 with respect to impracticability. **It applies only when the frustration is without the fault of the party who seeks to take advantage of the rule, and it does not apply if the language or circumstances indicate the contrary**...

Accordingly, this Court must again look to the objective intent of the parties to determine the principal purpose of both the Class 2 and Class 3 agreements.

In its submission, it is apparent to the Court that the Debtor is attempting to ascribe its own motives - orderly resolution of asbestos claims and reorganization of the Debtor pursuant to a 524(g) plan - to the Class 2 and Class 3 Claimants. However, as the Court noted in its analysis of Counts XVII and XVIII, the intent of the Class 2 and Class 3 Claimants was to receive payment for their claims in exchange for granting a release to the Debtor. Nowhere in the documents submitted is it suggested that the Claimants' primary purpose was for Congoleum to reorganize successfully.

With respect to the Class 2 Claimants, the Debtor's argument that this Court's interpretation of In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2005) "frustrates" the principal purpose of the parties is also not persuasive. Nothing in the Court's Plan Opinion held that pre-petition settlements can never be recognized in bankruptcy. Moreover, any argument that the Court should wait until the pending appeal of that opinion is finalized before deciding the Debtor's frustration count is without merit. The Court's Plan Opinion is the law of the case and, therefore, is relevant to the instant motion, despite the fact that it is currently on appeal.

20

In sum, the Court finds that it was neither the Class 2 nor the Class 3 Claimants' primary purpose in entering into their respective settlement agreements to reorganize the operations of the Debtor. As such, the Debtor's motion for summary judgment with respect to Count XIX is denied as to the Debtor and granted in favor of the Defendants.

## Count XX

The Debtor also seeks in Count XX "to equitably disallow claims settled under the pre-petition settlement agreements and the claimant agreement pursuant to 11 U.S.C. § 510(C)." *See* Third Amended Complaint, Count XX. Section 510(c) of the Bankruptcy Code states:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may –
> > (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interests to all or part of another allowed interest; or
> > (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510(C).

The Debtor argues that 11 U.S.C. § 510(c) allows for "equitable disallowance" of claims under principles of "equitable subordination." However, the Court notes that these are two distinct concepts and that § 510(c) deals solely with equitable subordination. While equitable disallowance is a means by which a claim may be invalidated, equitable subordination focuses on altering the order of payment of a claim, which in turn presupposes that a valid claim already exists. To allow equitable disallowance under the guise of equitable subordination would be contradictory. Furthermore, the Third Circuit noted the following in <u>Citicorp Venture Capital v. Committee of Creditors Holding Unsecured Claims, et. al.</u>:

In the course of reaching its holding, the district court concluded that § 510(c) is the exclusive remedy available to a bankruptcy court in circumstances like these and that the bankruptcy court was accordingly without authority to fashion a "disallowance" remedy. We do not endorse that conclusion. In Pepper v. Litton, 308 U.S. 295, 84 L. Ed. 281, 60 S. Ct. 238 (1939), the Supreme Court held the bankruptcy court exercised its statutory responsibilities as a court of equity and indicated that a purchase of claims against a debtor in bankruptcy by a fiduciary, when consistent with principles of equity, may properly lead either to the "disallowance" of the fiduciary's claim or to the subordination thereof. The rationale of Pepper would suggest that under pre-Code law a bankruptcy court was authorized to disallow a portion of the fiduciary's claim when that would produce an equitable result. **We find it unnecessary here to resolve the issue as to whether equitable "disallowance" remains an available remedy.** The Committee sought subordination under § 510(c), the district court has appropriately remanded this matter to the bankruptcy court for application of § 510(c), and neither side maintains that the authority granted by that section cannot be utilized to fashion a just remedy.

160 F.3d 982, 991 n. 7 (3d Cir. 1998). Thus, the Court finds that it is unclear as to whether "equitable disallowance" may be plead under § 510(c). While the Court makes no determination whether equitable disallowance may be plead under § 510(c), it is clear that equitable subordination is a valid cause of action under that section.

In addition to arguing that equitable disallowance may be plead under § 510(c), the Debtor maintains that the elements of a claim for equitable disallowance are the same as a claim for equitable subordination. The Third Circuit has articulated the required elements to sustain a claim for equitable subordination, holding that:

"[b]efore ordering equitable subordination, most courts have required a showing involving three elements: (1) the claimant must have engaged in some type of inequitable conduct, (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, and (3) equitable subordination of the claim must not be inconsistent with the provisions of the bankruptcy code. U.S. v. Noland, 517 U.S. 535, 116 S. Ct. 1524, 134 L. Ed. 2d

748 (1996) (describing existing case law as consistent with the three part test identified in In re Mobile Steel Co., 563 F.2d 692, 700 (5th Cir. 1977)).

Citicorp Venture Capital, 160 F.3d at 986-987. With respect to the first prong, the Debtor is correct in that it has been held that creditor misconduct is not a prerequisite for equitable subordination. *See* Burden v. United States, 917 F.2d 115, 120 (3d Cir. 1990) ("[I]n determining whether to subordinate, courts must balance the equities of the various claims; and creditor misconduct is not a prerequisite for equitable subordination"). However, the Third Circuit subsequently observed the following:

> This court, in In re Burden, 917 F.2d 115, 120 (3d Cir. 1990), concluded that "creditor misconduct is not [always] a prerequisite for equitable subordination." Burden involved subordination of a tax penalty in the absence of government misconduct. The Supreme Court, in two recent cases regarding the standards for tax penalty subordination, has refused to decide whether misconduct is required under § 510(c), resolving each case on the principle that "categorical" subordination is not permissible. *See* United States v. Reorganized CF&I Fabricators of Utah, Inc., 518 U.S. 213, 229, 135 L. Ed. 2d 506, 116 S. Ct. 2106 (1996); Noland, 517 U.S. at 543. **We need not here resolve the issue of whether misconduct is always a prerequisite to equitable subordination** because the bankruptcy court properly found misconduct.

Citicorp Venture Capital, 160 F.3d at 987 n. 2.

While it appears that the issue of whether creditor misconduct is always a prerequisite to equitable subordination is unresolved, the Court is satisfied that the focus of a § 510(c) claim is one of equity. In that regard, the Court is persuaded by the analysis in Waslow v. MNC Commercial Corp. (In re Paolella), noting that "in applying equitable subordination principles, the courts differentiate between insider and non-insider claimants." 161 B.R. 107, 118 (E.D.P.A. 1990), aff'd without opinion, 37 F.3d 1487 (3d Cir. Pa. 1994). The Waslow court observed that:

> [e]quitable subordination has seldom been invoked, much less
> successfully so, in cases involving non-insiders and/or
> non-fiduciaries. As Judge Easterbrook pointed out in <u>Kham & Nate's
> Shoes No. 2, Inc. v. First Bank</u>, 908 F.2d 1351, 1356 (7th Cir. 1990),
> "cases subordinating the claims of creditors that dealt at arm's length
> with the debtor are few and far between."

<u>Waslow</u>, 161 B.R. at 119. The court went on to note that "[t]he primary distinctions between subordinating the claims of insiders versus those of non-insiders lie in the severity of misconduct required to be shown, and the degree to which the court will scrutinize the claimant's actions toward the debtor or its creditors. <u>Id.</u> (*citing* <u>In re Teltronics Servs., Inc.</u>, 29 Bankr. 139, 169 (Bankr. E.D.N.Y. 1983)).

In this case, there is no disputing that the Class 2 and Class 3 Claimants are neither insiders nor fiduciaries of the Debtor. Rather, they are creditors with personal injury claims who entered into substantial arm's length negotiations with the Debtor in an effort to recover monies for their alleged injuries. As such, allowing the Debtor to present a § 510(c) claim under these set of facts would be inconsistent with the equitable principles inherent in the Bankruptcy Code. Therefore, the Debtor's motion for summary judgment with respect to Count XX is denied and summary judgment on that count is granted in favor of the Defendants. Counsel for Debtor should submit a form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: December 28, 2007

24